IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ALLEN SMITH

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL NO.: WDQ-12-3113
CRIMINAL NO.: WDQ-08-0086

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Allen Smith pled guilty to a racketeering conspiracy and was sentenced to 151 months imprisonment. Pending is Smith's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, the motion will be denied.

I. Background[1]

Smith was a member of the Tree Top Pirus ("TTP"), a subset of the Bloods gang. ECF No. 534 at 9, 12. TTP's purposes included maintaining its power through violence, murder, and narcotics trafficking. *Id.* at 12. Smith participated in phone conversations with other members on gang-related matters,

---

[1] The facts are from Smith's plea agreement. ECF No. 534.

including gang hierarchy, membership, promotions, and related gang business. *Id.*

As a TTP member, Smith conspired to distribute narcotics, and it was reasonably foreseeable to him that the conspiracy involved at least 40 grams, but less than 80 grams of MDMA (Ecstasy). *Id* at 14. On October 5, 2007, he caused Ecstasy pills to be distributed to Sean Frazier. *Id.* On October 20, 2007, on a recorded call, Frazier asked an unknown male if he had any "skittles" (Ecstasy), and the male replied that "Poe" (Smith), would bring him some. *Id.* On November 15, 2007, Smith sold Ecstasy to Anthony Fleming and Antwoine Gross. *Id.*

TTP members maintained and circulated firearms. *Id.* For example, on September 29, 2007, Frazier told Smith on a recorded call that he needed Smith to pick up a "platinum" (a handgun), from Keon Williams. *Id.* TTP members also regularly engaged in violence, including murders, assaults, robberies, kidnappings, and threatening and intimidating witnesses. *Id.* On October 19, 2007, Smith instructed Frazier and Tavon Howard on a recorded call that "Tracey is to be beat on sight . . ." *Id.*

On February 21, 2008, Smith was indicted by a grand jury for conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) (Count One), and conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count Two). *See* ECF

No. 1; PSR at 2. On April 23, 2009, Smith appeared before the Court for a guilty plea, but declined to enter a plea and expressed disagreements with his counsel. See ECF No. 531; ECF No. 700 at 2:22-3:2.

On May 9, 2009, Smith pled guilty to the racketeering charge pursuant to a plea agreement. See ECF Nos. 533, 534. The plea agreement stipulated that Smith was a career offender with a final offense level of 29. ECF No. 534 at 4.[2] The plea agreement contemplated a sentencing range of 151 to 188 months imprisonment. Id. Smith stated under oath that his counsel had not done anything he had told him not to or refused to do anything that he had told him to do. ECF No. 727 at 7:6-8:7. He also swore that he had read the plea agreement, discussed it with counsel, and understood it. Id. at 9:17-20. The Government summarized the evidence against Smith, as stipulated in the plea agreement fact statement. Id. at 13:11-18:14. Smith stated that the Government's factual summary was true and that he had pled guilty because he was guilty. Id. at 19:6-20:2.

A Presentence Report ("PSR") was prepared, which found that Smith was a career offender under U.S.S.G. § 4B1.1 based on

---

[2] As a career offender, his base offense level was 32, U.S.S.G. § 4B1.1(b). After a three level reduction for acceptance of responsibility, his final offense level was 29 and his criminal history was category VI.

3

three prior adult convictions. PSR at 10.[3] On August 4, 2009, Smith was sentenced to 151 months imprisonment, at the bottom of the advisory guidelines range of 151 to 188 months. *See* ECF Nos. 590, 597.[4] Smith appealed his conviction. ECF No. 596. The Fourth Circuit affirmed. *United States v. Allen Smith*, 640 F.3d 580 (4th Cir. 2011).

On October 22, 2012, Smith moved *pro se* to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1308. On January 18, 2013, the Government opposed the motion. ECF No. 1321. On February 19, 2013, Smith replied. ECF No. 1333. On July 31, 2013, Smith moved to amend and supplement his motion. ECF No. 1350.

II. Analysis

    A.    Smith's Motion

Smith argues that his counsel provided ineffective assistance by (1) failing to properly investigate, (2) laboring

---

[3] Smith's career offender status was based on 2002 convictions for unlawful manufacture of a controlled substance (Case 202114002); possession with intent to distribute a controlled substance (Case 202288035); and possession with intent to distribute cocaine (Case 202336015). *See* PSR ¶¶ 39, 46-47, 50-53. Smith was arrested on January 12, 2002 for unlawful manufacture of a controlled substance and he was sentenced to four years of imprisonment on August 23, 2002. PSR at 11. This case, 202114002, was considered along with 202336015 and 202288035 in determining Smith's status as a career offender. *Id.* at 10.

[4] The range of 151 to 188 months of imprisonment was based on a final offense level of 29 and a criminal history category VI.

4

under a conflict of interest, and (3) failing to challenge his career offender status.

> 1. Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, Smith must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Id.* at 687. To show deficient performance, Smith must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Id.* at 688.

To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a defendant pled guilty, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (reiterating *Hill* standard). If a defendant cannot prove prejudice, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (*citing Strickland*, 466 U.S. at 697).

2. Failure to Investigate

Smith argues that his counsel was ineffective for failing to investigate his alibi witnesses. See ECF No. 1308-1 at 2. Smith alleges that his lawyer did not contact two witnesses, Sean Frazier and Anthony Fleming, who could have testified that he had not distributed Ecstasy when alleged by the Government. See id. at 4. Smith has attached affidavits of Frazier and Fleming to support his allegations. See ECF Nos. 1308-3, 1308-4. Smith contends that his counsel told him that he had spoken to Frazier and Fleming, but that they had not provided any favorable information. See ECF No. 1308-1 at 3. Smith also attached his own affidavit in which he asserts that, had his counsel properly investigated, he would have insisted on going to trial. See ECF No. 1308-2 at 3.

Smith's assertions that he is actually innocent of the drug trafficking described in the plea agreement directly contradict his sworn testimony at his Rule 11 proceeding. There, Smith admitted his membership in the TTP, engaging in drug trafficking, and participating in other gang-related criminal activity. See ECF No. 534 at 12-15. He signed a statement acknowledging, "I have read this statement of facts, and carefully reviewed every part of it with my attorney. I understand it, and I acknowledge that it is true and correct." Id. at 15. During the Rule 11 hearing, Smith confirmed that the

statement of facts was true, that he was pleading guilty of his own free will, and that he was pleading guilty because he was guilty. See ECF No. 727 at 19:10-20:2. "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted). Because Smith has shown no extraordinary circumstances, the Court accepts the truth of his sworn statements at his guilty plea.

Additionally, Smith cannot demonstrate prejudice. The affidavits on which Smith relies refute only a small portion of the Government's case against him. See ECF Nos. 1308-3, 1308-4. Smith admitted that he was a member of the TTP and participated in gang activities, including acts of violence. See ECF No. 534 at 12-15. The evidence, Smith acknowledged, included wiretapped phone conversations in which he discusses gang-related business, is directed to get a gun, and instructs other TTP members to engage in violence. *Id.* Smith has not shown a reasonable probability that he would not have pled guilty but for his counsel's failure to investigate.

3. Conflict of Interest

To establish that a conflict of interest resulted in ineffective assistance, a petitioner "must show (1) that his lawyer was under an actual conflict of interest and (2) that this conflict adversely affected his lawyer's performance." *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007) (*quoting Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)) (internal quotation marks omitted). The mere possibility of conflict is insufficient. *See Nicholson*, 475 F.3d at 249. If the petitioner can show both elements, "prejudice is presumed and there is no need to demonstrate a reasonable probability that, but for the lawyer's conflict of interest the trial or sentencing outcome would have been different." *Id.*

Smith argues that an actual conflict of interest existed because his counsel entered into a discovery agreement with the Government. *See* ECF No. 1308-1 at 6. He asserts that the conflict prevented counsel from investigating, challenging evidence, and having meaningful conversations with Smith. *See* ECF No. 1333 at 8. The Government contends that counsel exercised sound professional judgment because the agreement secured important benefits for Smith and provided complete discovery. *See* ECF No. 1321 at 20. The Government also argues that Smith has failed to establish any adverse effect on

counsel's performance from the discovery agreement and the alleged conflict of interest. See id.

Smith has not demonstrated an actual conflict of interest. Entering into a discovery agreement with the Government is a common practice in this district and does not create a conflict of interest. The discovery agreement prohibits counsel from providing a defendant with copies of discovery materials for reasons of witness safety;[5] however, it allows counsel to review any discovery materials with the defendant. Smith has not alleged how the agreement adversely affected his defense. Accordingly, Smith's conflict of interest claims are unfounded.

    4.    Failure to Challenge Career Offender Status

Smith argues that he received ineffective assistance because his counsel did not object to the court's application of the career offender provision. ECF No. 1308-1 at 7.[6] He asserts that he is not a career offender because two prior controlled substance offenses were consolidated. See id. at 7-8.[7] The

---

[5] The distribution of discovery by defendants to their associates has resulted in the deaths of witnesses in this district.

[6] In Smith's "Motion to Amend and Supplement" his § 2255 motion, he argues that the career offender enhancement provision is inapplicable when the defendant receives a consolidated sentence or consolidated judgment. ECF No. 1350 at 2. Because this motion parallels the argument in his original § 2255, the Court will consider it as well.

[7] Under U.S.S.G. § 4B1.1(a), Smith is a career offender if (1) he was at least 18 years old at the time of the offense, (2) the

Government contends that Smith stipulated that he was a career offender, he has no evidence supporting his claim that the convictions should be counted as one, and the offenses were separated by an intervening arrest. ECF No. 1321 at 21-22.

Under the career offender provision of the advisory sentencing guidelines, at least two qualifying felony convictions must be counted separately. *See* U.S.S.G. § 4B1.2(c). Sentences are counted separately if the offenses were separated by an intervening arrest. *See* U.S.S.G. § 4A1.2(a)(2). "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument, or (B) the sentences were imposed on the same day." *Id.*

Here, Smith argues that the career offender provision is inapplicable because he was sentenced on April 28, 2003 for two consolidated offenses that occurred without an intervening arrest.[8] *See* ECF No. 1308-1 at 7; ECF No. 1333 at 10; ECF No. 1350 at 3. Smith's argument is contradicted by the Presentence Report which states that Smith was arrested on September 4, 2003

---

instant offense is a felony that is either a violent crime or controlled substance offense, and (3) he has at least two prior felony convictions of either a violent crime or a controlled substance offense.

[8] Smith argues that cases 202336015 and 202288035, both for possession with intent to distribute a controlled substance, should be considered as one offense.

for possession with intent to distribute, and he was arrested on October 5, 2002 for a similar offense committed on September 11, 2002. *See* PSR, Addendum at 2. The PSR correctly concluded that the convictions were separate. *Id.* Moreover, even if these two offenses counted only once, Smith has a clearly separate conviction for a similar offense; which--with either of the other convictions--would have been sufficient to earn Smith a career offender status. As Smith had at least two qualifying felony convictions, his counsel's decision to stipulate to Smith's career offender status was not an error.

B. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from

seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Smith has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Smith's motion to vacate, set aside, or correct sentence will be denied.

_____11/5/13_____  
Date

_____/s/ William D. Quarles_____  
William D. Quarles, Jr.  
United States District Judge